24CA1912 Peo in Interest of AC 01-09-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1912
Pueblo County District Court No. 24MH30101
Honorable Timothy O'Shea, Judge

People of the State of Colorado,

Petitioner-Appellee,

In the Interest of A.C.

Respondent-Appellant.

ORDER AFFIRMED

Division V
Opinion by JUDGE SULLIVAN
Freyre and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 9, 2025

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1    A.C. appeals the district court's order authorizing the involuntary administration of medication. We affirm.

## I.    Background

¶ 2    A.C. was committed to the Colorado Mental Health Hospital in Pueblo (CMHHIP) after being found incompetent to proceed in a criminal case. He was diagnosed with an unspecified schizophrenia spectrum and other psychotic disorder and presented with significant paranoid delusions and auditory hallucinations. Since his admission to the hospital in January 2021, A.C. had consistently refused all medication. However, after an incident with another patient in October, 2024, he was started on an emergency course of Zyprexa (Olanzapine), an antipsychotic. At the request of CMHHIP staff psychiatrist Dr. Paul Mattox, the People petitioned the district court to authorize the involuntary administration of Zyprexa.

¶ 3    The district court held an evidentiary hearing at which Dr. Mattox and A.C. testified. Dr. Mattox explained A.C.'s disorder and accompanying symptoms. And he described the requested medication, its side effects, and its necessity for treating A.C.'s symptoms. A.C. for the most part denied having a mental illness,

1

explaining, "If I do, I don't think it's that bad." And while he testified that he was agreeable to taking Zyprexa, he also testified that he would stop taking it once he started to develop "a tolerance."

¶ 4     Finding that Dr. Mattox testified "credibly and persuasively," the district court granted the petition and entered an order authorizing the involuntary administration of Zyprexa.

## II.     Legal Principles and Standard of Review

¶ 5     An involuntarily committed person retains the right to refuse treatment. *See People v. Medina*, 705 P.2d 961, 971 (Colo. 1985). Even so, a court may authorize the involuntary administration of medication if the People prove the following elements by clear and convincing evidence:

> (1) the patient is incompetent to effectively participate in the treatment decision;
>
> (2) treatment by antipsychotic medication is necessary to prevent a significant and likely long-term deterioration in the patient's mental condition or to prevent the likelihood of the patient's causing serious harm to himself or others in the institution;
>
> (3) a less intrusive treatment alternative is not available; and

(4) the patient's need for treatment by antipsychotic medication is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment.

*Id.* at 973.[1]  We determine whether the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the court's order.  *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13.  A physician's testimony alone may suffice to satisfy the *Medina* test.  *Id.* at ¶ 30.

¶ 6      Applying the *Medina* test presents a mixed question of fact and law, meaning we defer to the district court's factual findings if supported by the record but review its legal conclusions de novo.  *People in Interest of R.C.*, 2019 COA 99M, ¶ 7.  As the fact finder, the district court determines witness credibility; the sufficiency, probative effect, and weight of the evidence; and the inferences and conclusions to be drawn from it.  *Id.*

---

[1] A different test applies to petitions to administer involuntary medication solely to restore competency.  *Sell v. United States*, 539 U.S. 166, 180-81 (2003).  But the parties don't dispute that *People v. Medina*, 705 P.2d 961 (Colo. 1985), applies here because the purpose of the medication is to prevent a significant and long-term deterioration in A.C.'s mental condition and because he poses a serious risk of danger to himself or others.  *See Sell*, 539 U.S. at 181-83.

## III. Discussion

¶ 7      A.C. doesn't contest the district court's findings on the first and third *Medina* elements. But he contends the People didn't present sufficient evidence to prove the second and fourth *Medina* elements. We disagree.

### A. The Second *Medina* Element

¶ 8      The second *Medina* element may be satisfied by showing either a significant and likely long-term deterioration or the likelihood of serious harm to self or others in the institution. *Medina*, 705 P.2d at 973. The district court found that the recommended treatment is necessary both "to prevent a significant and long-term deterioration" in A.C.'s mental condition and "to prevent the likelihood of [A.C.] causing serious harm to himself or others in the institution."

¶ 9      As to the district court's finding that Zyprexa was necessary to prevent significant and long-term deterioration in A.C.'s mental condition, the court expressly credited and adopted Dr. Mattox's testimony. Dr. Mattox opined that, without the requested medications, there would be a significant and likely long-term deterioration in A.C.'s mental condition. He explained that A.C. has

4

"gone through extensive deterioration" as his "persistent delusional beliefs have led him to deteriorating to the point that he's become physically aggressive and acted on those beliefs towards a fellow patient."

¶ 10    For the same reason the district court credited Dr. Mattox's testimony that A.C.'s delusional beliefs have led him to act on those beliefs in a physically aggressive manner, the court found that the requested medication was necessary to prevent A.C. from causing serious harm to himself or others in the institution. The court credited Dr. Mattox's testimony that A.C.'s "actions being aggressive towards another patient" posed a risk to others and "could also put him at risk for retaliation," which would pose a risk of harm to himself.

¶ 11    A.C. argues that Dr. Mattox's testimony doesn't support the district court's findings because the "single episode" cited by the doctor was A.C.'s only purportedly aggressive episode over several years of hospitalization without medication. But Dr. Mattox also testified that he anticipates that, "if [A.C.] were not to continue treatment with psychotic medications," such an episode "would occur again." To the extent A.C. asks us to second-guess witness

credibility or draw different inferences from the testimony, we decline to do so.  *See R.C.,* ¶ 7.

¶ 12      Accordingly, we conclude that sufficient evidence supports the district court's finding that the requested medication is necessary to prevent both a significant and likely long-term deterioration in A.C.'s mental condition and the likelihood of A.C. causing serious harm to himself or others in the institution.

## B.      The Fourth *Medina* Element

¶ 13      In assessing the fourth *Medina* element — whether the patient's need for treatment is sufficiently compelling to override any legitimate interest in refusing treatment — a court must consider "whether the patient's refusal is bona fide and legitimate" and, if it is, "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution."  *Medina,* 705 P.2d at 974.

¶ 14      A.C. asserts that the state's interest in treating him is insufficient to overcome his bona fide and legitimate interest in avoiding severe side effects by refusing treatment.  More specifically,

he claims that Dr. Mattox testified that potential side effects of Zyprexa include "putting someone at risk for complications of diabetes" and A.C. is diabetic and has already suffered a "really bad diabetic reaction" to antipsychotics in the past.

¶ 15    We acknowledge A.C.'s legitimate concern regarding potentially harmful side effects, particularly considering his diabetes diagnosis. But the diabetic reaction A.C. testified to occurred after he took Seroquel, not Zyprexa.  And in the two weeks A.C. has been taking Zyprexa on an emergency basis, A.C. testified that he hadn't noticed any side effects except that it makes him "extremely tired."  Dr. Mattox's testimony corroborates A.C.'s.  Dr. Mattox explained that for the most part A.C. "has denied [any] side effects" from the medication, but recently he reported that it "was causing him to feel tired."  Dr. Mattox explained that sedation is a side effect of the medication but "usually it decreases over time."

¶ 16    Beyond this, Dr. Mattox testified that A.C. "is being monitored very closely" and there have "not been any signs so far that the medication is significantly impacting his diabetes management." Dr. Mattox testified that A.C. will continue to be monitored by his medical team through daily visits by nursing staff, frequent

7

interviews with Dr. Mattox, and blood work.  And he testified that additional medications are available to neutralize any potential new side effects should they arise.  Further, Dr. Mattox opined that failing to medicate A.C. would be more harmful than the risk posed by using the medication.

¶ 17     We therefore conclude that sufficient evidence supports the district court's finding that the need to treat A.C.'s mental condition is sufficiently compelling to override his bona fide and legitimate interest in refusing treatment.

## IV.  Disposition

¶ 18     We affirm the order.

JUDGE FREYRE and JUDGE SCHOCK concur.